UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

        Plaintiff,

        v.

CHARTER COMMUNICATIONS LLC,

        Defendant.

Case No. 18-cv-1333-bhl

## ORDER GRANTING SUMMARY JUDGMENT

In this case, the Equal Employment Opportunity Commission (EEOC) brings a failure-to-accommodate claim under Title I of the Americans with Disabilities Act (ADA) on behalf of James Kimmons against his former employer, Charter Communications LLC (Charter). Both parties have moved for summary judgment. The dispositive question is whether the ADA requires an employer to accommodate an employee who can perform his job's essential functions without such accommodation. Seventh Circuit precedent disclaims any such requirement. Accordingly, the Court will grant Defendant's motion, and Plaintiff's motion will be denied.

### FACTUAL BACKGROUND[1]

Charter is a telecommunications and media company that operates a call center in Milwaukee, Wisconsin. (ECF No. 37 at 2.) Between 2016 and 2017, the call center was open seven days a week, from 7:00 a.m. to 9:00 p.m., and employed, among other workers, "retention representatives." (*Id.* at 3.) Charter's "ADA – Job Description and Essential Functions" form states that the purpose of a retention representative "is to provide customer retention sales support for all TWC products in a manner consistent with Time Warner Cable policies, procedures, quality, standards, customer needs and applicable local, state, and federal procedures." (*Id.* at 3-4.)[2]

---

[1] These facts are drawn from the parties' proposed statements of undisputed facts (and responses). (ECF Nos. 29, 33, 37, 38, 41, 42, 46 & 49.) Disputed facts are viewed in the light most favorable to the nonmoving party.
[2] Time Warner Cable originally operated the Milwaukee call center. (ECF No. 29 at 1, n. 1.) Charter acquired Time Warner Cable in May 2016. (*Id.*) For the purposes of this order, the distinction between Time Warner Cable and Charter is immaterial.

Charter's Director of Human Resources, Pamela Brown, helpfully strips away the layers of corporate jargon and explains that retention representatives "answer the calls that come in [to Charter]," with an eye toward "retain[ing] existing customers" and attempting "to upgrade [those customers] to services they do not have." (*Id.* at 4.) Full-time retention representatives work nine-hour shifts (including a one-hour break for lunch), beginning every hour, on the hour, between 7:00 a.m. and 12:00 p.m., five days per week. (*Id.*)

In 2016, James Kimmons, a resident of Racine, Wisconsin, who lived about 36 miles (or an approximately one-hour drive) from the Milwaukee call center, applied to work there as a retention representative. (*Id.* at 2, 11-12.) Following both a telephone screening and face-to-face interview, Charter hired Kimmons, and his employment commenced on March 4, 2016. (*Id.* at 12-14.) From that date until April 10, 2016, he underwent training from 8:00 a.m. to 5:00 p.m., Monday through Friday. (*Id.* at 14-15.) Kimmons' training continued from April 11, 2016 to July 7, 2016 from 10:00 a.m. to 7:00 p.m., Monday through Friday. (*Id.* at 15.) Near the end of the training period, Kimmons and the other individuals in his new hire class attended a shift-selection meeting. (*Id.* at 15-16.) At the meeting, Kimmons selected the 12:00 p.m. to 9:00 p.m. shift because it "was the only shift that was left." (*Id.* at 16.) Charter expected Kimmons to work this shift for at least 6 to 12 months, until the next "shift bid." (*See id.* at 9.)

According to Dr. Bruce Savin, as of 2016, Kimmons had "early cataracts." (ECF No. 41 at 2.) Kimmons testified that these cataracts made driving at night difficult because they caused outside light to glare and obstruct his vision. (*Id.* at 3.) Accordingly, he submitted an "ADA – Employee Accommodation Request Form" requesting a shift that would allow him to avoid driving to or from work in the dark. (ECF No. 37 at 17-18.) In support of his application, Kimmons submitted two "ADA – Physician Certification" forms, one signed by Dr. Savin, and the other signed by Dr. Reginald Adams. (*Id.* at 24-25, 30-31.) Kimmons testified that he did not have difficulty performing his job, and he was not seeking any accommodation with respect to his actual job duties. (*Id.* at 19-20.) Dr. Savin agreed, testifying that Kimmons' cataracts would not have prevented him from performing any of the essential functions of the retention representative position listed on the "ADA – Job Description and Essential Functions" document Charter provided. (*Id.* at 26.)

On August 8, 2016, in response to his ADA Request Form, Charter approved Kimmons for a temporary, 30-day shift change. (*Id.* at 35.) He was permitted to work the 10:00 a.m. to 7:00

p.m. shift until September 6, 2016, at which point he would return to his regular shift schedule. (*Id.*) On August 29, 2016, Kimmons requested a 30-day extension on his temporary shift change. (*Id.* at 36.) Charter denied his request later that same day. (*Id.* at 37.) On September 7, 2016, Kimmons returned to the 12:00 p.m. to 9:00 p.m. shift and continued to work that schedule until his termination on January 25, 2017. (*Id.* at 38.)

Kimmons subsequently filed a charge with the EEOC alleging Charter had violated Title I of the ADA. (ECF No. 1 at 2.) On May 21, 2018, the EEOC issued a Letter of Determination to Charter finding reasonable cause to believe that the ADA was violated and inviting Charter to join with the EEOC in informal methods of conciliation to eliminate the unlawful employment practices and provide appropriate relief. (*Id.*) In June 2018, the EEOC issued to Charter a Notice of Conciliation Failure advising that the EEOC was unable to secure from Charter an acceptable conciliation agreement. (*Id.* at 3.) The EEOC then filed this case against Charter on Kimmons' behalf. (ECF No. 37 at 2.)

## SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate where the admissible evidence reveals no genuine issue of any material fact." *Sweatt v. Union Pac. R. Co.*, 796 F.3d 701, 707 (7th Cir. 2015) (citing Fed. R. Civ. P. 56(c)). Material facts are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of "material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If the parties assert different views of the facts, the Court must view the record in the light most favorable to the nonmoving party. *E.E.O.C. v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000).

## ANALYSIS

Charter argues three independent grounds on which it contends it is entitled to summary judgment: (1) Kimmons did not have a disability under the ADA; (2) even if Kimmons did have a disability, Charter was not required to accommodate Kimmons' when he could already perform all the essential functions of his job; and (3) even if Charter was required to accommodate him, Kimmons' accommodation requests were unreasonable because they would have been ineffective. (ECF No. 27 at 2.) In its summary judgment motion, the EEOC argues that the undisputed record proves that Charter unreasonably denied Kimmons an accommodation to which he was entitled under the ADA, and Charter has failed to adduce sufficient facts to support an undue hardship

defense. (ECF No. 31 at 1-2.) Because, as a matter of law, Charter was not required to accommodate Kimmons, Charter's motion will be granted and the EEOC's motion denied.

**I.      The ADA Does Not Require an Employer to Accommodate an Individual Who Can Perform the Essential Functions of His Job Without Such Accommodation.**

Title I of the ADA states, "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. §12112(a). Discrimination "against a qualified individual on the basis of disability" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee." 42 U.S.C. §12112(b)(5)(A). A "qualified individual" is defined as one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. §12111(8). A "reasonable accommodation" may include, among other things, "making existing facilities used by employees readily accessible to and usable by individuals with disabilities; . . . job restructuring[;] [and creating] part-time or modified work schedules[.]" 42 U.S.C. §12111(9). It follows then, that to state a failure-to-accommodate claim under the ADA, "a plaintiff must show that: (1) [he] is a qualified individual with a disability; (2) the employer was aware of [his] disability; and (3) the employer failed to reasonably accommodate the disability." *E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005) (citing *Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 572 (7th Cir. 2001).

For purposes of this motion, the Court assumes that Kimmons' alleged night blindness could constitute a disability under the ADA. *See Harris v. MatureCare of Standifer Place LLC*, No. 1:14-CV-64, 2015 WL 4662441, at *3 (E.D. Tenn. Aug. 5, 2015) (collecting Second, Third, and Ninth Circuit cases finding disabilities where plaintiffs with night blindness introduced evidence of their difficulty seeing while driving). The parties agree both that Kimmons requested an accommodation based on this purported disability and that his accommodation request did not implicate the essential functions of his job as a retention representative. (*See* ECF No. 28 at 2; ECF No. 36 at 15-16.) Their dispute concerns the breadth of the ADA. The EEOC argues that the ADA imposes a duty on employers to grant reasonable and nonburdensome accommodations permitting an employee to arrive at work, even where the proposed accommodation does not relate to an essential function of the employee's job. (ECF No. 36 at 16-17.) Conversely, Charter

contends the ADA does not require an employer to accommodate a disability unrelated to the employee's ability to perform his job's essential functions. (ECF No. 28 at 21-24.)

The Seventh Circuit resolved this dispute in *Brumfield v. City of Chicago*, 735 F.3d 619 (7th Cir. 2013). In that case, the Court explained that, "[w]hereas the ADA's other anti-discrimination provisions protect *all* qualified individuals, the reasonable-accommodation requirement applies only to the known physical or mental limitations of *otherwise* qualified individuals." *Id.* at 632 (emphasis in original). Thus, "an employer's accommodation duty is triggered only in situations where an individual who is qualified on paper requires an accommodation in order to be able to perform the essential functions of the job." *Id.* "It follows that an employer need not accommodate a disability that is irrelevant to an employee's ability to perform the essential functions of [his] job—not because such an accommodation might be unreasonable, but because the employee is fully qualified for the job without accommodation and therefore is not entitled to an accommodation in the first place." *Id.* In other words, a qualified employee with a disability who can perform the essential functions of his job without an accommodation has no right to request one simply because it might improve the quality of his life outside of work. Crucially, this is true even if the employee has a diagnosed disability that could trigger the right to accommodations under different circumstances. The critical question is whether the employee's diagnosed disability impacts his capacity to perform his job's essential functions. If it does not, then the employer has no obligation to accommodate it.

Nothing in the record suggests that Kimmons' night blindness hampered him as a retention representative in any way. In fact, Kimmons testified that he had no difficulty performing any job functions while working in the Milwaukee call center. (ECF No. 37 at 19-20.) And he admitted that he was not seeking an accommodation related to the duties of his position. (*Id.*) He requested a different shift schedule not for the benefit of his performance, but the convenience of his commute. His case is thus a dead ringer for *Brumfield*. As there, Kimmons' disability was irrelevant to his ability to perform the essential functions of his job. Therefore, Charter had no duty to accommodate him.

II.     **The EEOC's Attempts to Avoid *Brumfield* Are Unavailing.**

The EEOC cites a litany of cases that purport to contradict the holding in *Brumfield*, but in every instance, the cited decision is either non-binding or distinguishable. *See, e.g.*, ECF No. 50 at 6-8. Three of the cases the EEOC relies on come from outside the Seventh Circuit. *See Colwell*

*v. Rite Aid Corp.*, 602 F.3d 495, 505 (3d Cir. 2010) ("We therefore hold that under certain circumstances the ADA can obligate an employer to accommodate an employee's disability-related difficulties in getting to work, if reasonable."); *Lyons v. Legal Aid Soc.*, 68 F.3d 1512, 1517 (2d Cir. 1995) ("Plainly there is nothing inherently unreasonable, given the stated view of Congress and the agencies responsible for overseeing the federal disability statutes, in requiring an employer to furnish an otherwise qualified disabled employee with assistance related to her ability to get to work."); *Livingston v. Fred Meyer Stores, Inc.*, 388 F. App'x. 738, 740 (9th Cir. 2010) ("We have recognized that an employer has a duty to accommodate an employee's limitations in getting to and from work."). Not only is the Court not bound by these decisions, the exact opposite is true. "A district court in Wisconsin must follow [7th Circuit] decisions, but it owes no more than respectful consideration to the views of other circuits." *U.S. v. Glaser*, 14 F.3d 1213, 1216 (7th Cir. 1994). The Seventh Circuit's opinion in *Brumfield* is directly on point. This Court has no power to disregard that opinion based on extra-circuit disagreement.

Perhaps recognizing the futility in trying to persuade this Court with the inapposite precedent of other circuits, the EEOC next cites to three Seventh Circuit cases for the proposition that ADA failure-to-accommodate claims are to be evaluated according to the reasonableness of the requested accommodation regardless of whether the employee can perform all essential functions of his job without such accommodation. (ECF No. 36 at 17-21.) According to Plaintiff, the Court in *Sears*, 417 F.3d at 803 held that "a reasonable jury could find that [the] employer failed to reasonably accommodate [an] employee's ability to get to work." (ECF No. 36 at 17.) Similarly, Plaintiff cites *Yochim v. Carson*, 935 F.3d 586, 591 (7th Cir. 2019), and *Cloe v. City of Indianapolis*, 712 F.3d 1171, 1179 (7th Cir. 2013), as holding that commute-related accommodations are evaluated under the reasonableness standard. (ECF No. 36 at 19.) Plaintiff is tilting at windmills. The issue in this case is not whether the ADA might ever compel an employer to accommodate an employee's commute. If the commute is an essential job function that the employee could perform if the employer reasonably accommodated his disability, then a failure-to-accommodate claim would be evaluated according to the reasonableness standard set forth in *Sears*, *Yochim*, and *Cloe*. However, as the *Brumfield* Court plainly stated, "[t]he *Sears* formulation should not be understood to enable a plaintiff to state a failure-to-accommodate claim against [his] employer even though [he] was able to perform all essential functions of [his] job without regard to [his] physical or mental limitations." 735 F.3d at 631-32. Neither party contends

that Kimmons' commute was an essential function of his retention representative position. Accordingly, the *Sears* formulation is inapplicable.

Plaintiff's strongest appeal is to *Filar v. Bd. of Educ. of City of Chicago*, 526 F.3d 1054, 1066-67 (7th Cir. 2008). *See* ECF No. 36 at 18-19. In *Filar*, the district court granted summary judgment to an employer in an ADA failure-to-accommodate case on the grounds that the employee's hip condition did not affect her ability to perform the essential functions of her job as a teacher. 526 F.3d at 1066. The Seventh Circuit affirmed this ruling but "for different reasons." *Id.* at 1066-67. In concluding that the employee's requested accommodation was unreasonable, the Court noted, "[T]hat an employee can 'perform the essential functions' of a teaching position despite her disability and 'without reasonable accommodation' does not exclude her from the definition of a 'qualified individual with a disability.'" *Id.* at 1067 (quoting 42 U.S.C. §12111(8). "Instead, the question is whether her requested accommodation was reasonable, and we don't think it was." 526 F.3d at 1067. Unfortunately for Plaintiff, this is little more than a dictum. A dictum "'is a remark, an aside, concerning some rule of law or legal proposition that is not necessarily essential to the decision and lacks the authority of adjudication.'" *U.S. v. Crawley*, 837 F.2d 291, 292 (7th Cir. 1988) (quoting *Stover v. Stover*, 60 Md. App. 470, 476 (1984)). "It is 'a statement not addressed to the question before the court or necessary for its decision.'" *Crawley*, 837 F.2d at 292 (quoting *Am. Fam. Mut. Ins. Co. v. Shannon*, 356 N.W.2d 175, 178 (1984)). The *Filar* Court ultimately affirmed the district court based on the unreasonableness of the employee's requested accommodation. 526 F.3d at 1067. Thus, its construction of the ADA reasonable-accommodation provision was unnecessary to the outcome of the case. Accordingly, "a later court, even if it is an inferior court, is free to reject [it]." *Crawley*, 837 F.2d at 292. Indeed, the Seventh Circuit adopted a different holding years later in *Brumfield*, a precedent this Court is, as noted above, bound to follow.

## CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment under Fed. R. Civ. P. 56 (ECF No. 31) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment under Fed. R. Civ. P. 56 (ECF No. 27) is **GRANTED**, and the case is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on December 17, 2021.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge